IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| SUSAN BARNHART, as Administrator of the Estate of Roy D. Barnhart, Deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 13-772-SMY-DGW |
| THE VILLAGE OF BUCKNER, ILLINOIS; PATROLMAN WILLIAM McKINNEY, Individually and in his Official Capacity as an Officer for the Buckner Police Department, THE CITY OF CHRISTOPHER, ILLINOIS; and OFFICER RICHARD DALE, Individually And in his Official Capacity as an Officer For the Village of Christopher Police Department, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## **MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY ON THE ISSUE OF CAUSATION OF DEATH**

Now comes the defendant, WILLIAM McKINNEY, Individually and in his Official Capacity as an Officer for the Buckner Police Department, and the VILLAGE OF BUCKNER, ILLINOIS, by and through their undersigned attorneys, PIERCE LAW FIRM, P.C. and BLEYER and BLEYER, and for their Memorandum in Support of Motion for Partial Summary Judgment on the Issue of Causation of Death, state as follows:

This is a complicated case which started farcical and turned tragic. Roy Barnhart, Sr. died at St. Louis University Hospital on July 11, 2013 from a subdural hematoma. His family claims this came as a result of being slapped in the face by Officer William McKinney, from falling after being tased by Officer Richard Dale, or by some combination thereof. McKinney admits to having slapped the decedent but beyond that, there is absolutely no medical testimony

1

other than rampant speculation which would allow a jury to believe that this minor slap caused the subject's death.

By way of background, the incident began on July 6, 2013 as an intra-family dispute over the ownership of some fishing equipment and a trailer in Buckner, Illinois.[1] Amanda Barnhart claimed that Roy Barnhart, Jr. had illegally taken a trailer and some fishing equipment. McKinney deposition, p. 48. Buckner Police Officer Bill McKinney was called to the scene to referee the dispute. During the course of this investigation, Officer Richie Dale arrived from the neighboring village of Christopher as backup after receiving a report of a fight in progress in front of Buckner City Hall. Richard Dale deposition, p. 53. Officer McKinney, Officer Dale, Amanda Barnhart, and Richard Curry were standing directly in front of Village Hall. The Latham house is directly across the street which is where Roy, Jr. was located. The exact details of the dispute are not directly relevant to the end result of this case.

At one point during the discussions, Roy Barnhart, Sr. arrived at the scene, riding on his riding lawnmower. McKinney deposition, p. 66. He then pushed Officer Dale, attempting to get past him towards Richard Curry. McKinney deposition, p. 75; Dale deposition, pp. 67-68. Given that Barnhart had just assaulted a police officer, Officer McKinney administered pepper spray. McKinney deposition, p. 77. This, however, did not have its desired effect and Barnhart, Sr., instead of becoming compliant, fled across the street toward the Latham house. McKinney deposition, pp. 85-87; Dale deposition, p. 72. Officer Dale pursued on foot. When Barnhart, Sr. failed to stop, Officer Dale administered his taser striking the decedent in the back, causing him to fall face first into the gravel striking his head. Dale deposition, p. 80. McKinney was able to

---

[1] The players in this case are difficult to keep straight without a scorecard. At the time of his death, Roy Barnhart, Sr. was married to Susan Barnhart. His ex-wife, Louise Latham, also lived in Buckner with her husband, George. Decedent's adult son, Roy "Dale" Barnhart, Jr. lived with Ms. Latham. Barnhart, Jr.'s estranged wife, Amanda Barnhart, was then engaged to Richard Curry.

2

get Barnhart, Sr. handcuffed. Barnhart was then escorted back to the edge of the street. There is some allegation that as he was being seated, he fell again, striking his head.

EMTs arrived within seconds to begin tending to the tased subject who, despite all that occurred, was continuing to be verbally abusive. McKinney deposition, pp. 108-109. Officer McKinney, in an inexcusable lapse of judgment, then slapped the plaintiff in the face. McKinney deposition, pp. 42-43. He describes this as using as an open right hand, striking the plaintiff along the left jaw line. McKinney deposition, pp. 42-43.

McKinney was led away following which the EMTs resumed their treatment on the subject.[2] He was taken to Herrin Hospital and then transported to St. Louis University Hospital. He ultimately died of a subdural hematoma. See copy of Death Certificate as Exhibit A.

McKinney admits that his actions were not appropriate and do subject him to liability. The testimony, however, contains insufficient evidence to support a causal link between any of McKinney's actions and the death of Roy Barnhart, Sr. Under the circumstances, the jury should not be allowed to speculate and draw a causal link that even the medical professionals cannot make.

The autopsy was performed by one of St. Louis City's Medical Examiners, Dr. Juliette Scantlebury. Her report is attached hereto as Exhibit B. She cites the subdural hematoma but does not indicate what caused the subdural hematoma. Her deposition has been taken and is attached in full as Exhibit C. She very candidly admitted that she is unable to draw a causal connection between McKinney's conduct and the death.

---

[2] McKinney ultimately pled guilty to official misconduct for his actions in striking a handcuffed subject. As a result of his felony conviction, McKinney is no longer a police officer and is in fact still serving his periodic incarceration every weekend in the Franklin County Jail for a period of 18 months. After an extensive investigation, the Illinois State Police concluded that the only inappropriate action which occurred was the facial slap by McKinney. Exhibit D.

Admissibility of testimony like this is governed by Rule 702 of the Federal Rules of Evidence which provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

It is the trial judge's task of ensuring that expert's testimony both rest on reliable foundation and is relevant to the task at hand. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The Supreme Court in *Daubert* makes it plain that the trial judge is to act as the gatekeeper in screening such testimony for relevance and reliability, that is, to make an assessment whether the reasoning and methodology underlying the testimony is scientifically valid. See e.g., *Peitzmeier v. Hennessy Industries, Inc.*, 97 F.3d 293, 296-97 (8th Cir. 1996). This "gatekeeping" obligation applies not only to testimony based on scientific knowledge but to all expert testimony. *Kumho Tire Company, Ltd. v. Carmicheal,* 526 U.S. 137, 149 (1999).

The requirement that testimony be reliable is satisfied by showing that the witness possesses the expertise it qualifies the witness to testify in on a particular subject matter. *Roberson v. Norton Company*, 148 F.3d 905, 907 (8th Cir. 1998). Factors to consider in making the reliability inquiry are: (1) whether the theory, reasoning, methodology or technique can be and has been tested; (2) whether it has been subjected to pure review and publication; (3) the known or potential rate of error; and (4) whether the method or theory utilized enjoys widespread acceptance. *Daubert*, 509 U.S. at 593-94.

In actuality, this is not truly a *Daubert* situation but still reflects the same principles through the court's gatekeeper function. *Daubert* mandates that opinion testimony be reliable.

Defendant is not saying that Dr. Scantlebury's opinions are not reliable but instead is pointing out that **Dr. Scantlebury does not have any such opinions** nor has plaintiff disclosed any experts who can opine that defendant's actions caused decedent's death. Absent this testimony, any jury verdict finding McKinney liable for the death of Roy Barnhart would be based on pure speculation.

It is axiomatic that proximate cause is an element of plaintiff's burden of proof. This is not a case, however, where there are competing experts as to the cause which would allow the jury to credit one and ignore the other. Instead, there is absolutely no evidence that McKinney's conduct caused Barnhart's death.

A review of Dr. Scantlebury's testimony makes it explicitly clear that she does not have an opinion that McKinney's actions caused or even contributed to cause the death. The following is what she has testified to:

```
14        Q.    With the information you've been provided
15  both prior to the autopsy and then subsequent when you
16  talked to the Illinois police officer, did you form an
17  opinion which blow, if any, was cause of
18  Mr. Barnhart's death?
19        A.    No.
20        Q.    Is there any way that you feel you can
21  make that determination?  Any additional information
22  which you would need to be able to make that
23  determination?
24        A.    From examining the original CT
11:1  examination that was done at the Herrin Hospital, I
 2  could say that the fall that he had after being tased
 3  could have played a role in his developing subdural
 4  hematoma, but whether -- if he was struck by someone
 5  else, if that exacerbated or also caused it, I
 6  wouldn't be able to tell.
```

Scantlebury deposition, p. 11.

```
16        Q.    Okay.  And with the blow to the face, we
17 believe the evidence is going to show that it would
18 have been to Mr. Barnhart's left side of his face
19 administered by a right-handed person.  Did you see
20 anything consistent with a left-sided impact which
21 would have contributed to Mr. Barnhart's death?
22        A.    Not from my report, no.
```

Scantlebury deposition, p. 13.

```
17        Q.    Okay.  Were all of the findings at least
18 with regard to the skull that you made, were they all
19 right-sided?
20        A.    Yes.
```

Scantlebury deposition, p. 14.

```
 8        Q.    Anything about those which led you to
 9 believe that the subsequent left-sided facial strike
10 would have played any part in causing these hematomas
11 and hemorrhages?
12        A.    I don't think I would be able to know
13 that, no.
```

Scantlebury deposition, p. 15.

```
 7        Q.    Would it be fair to say that you can't
 8 rule out the facial strike, but the findings are more
 9 consistent with the history of having fallen from his
10 own height onto the ground?
11        A.    Not entirely.
12        Q.    Okay.  Why not?
13        A.    Because, well, I guess from the
14 statement, it sounds like you -- I think I would only
15 be able to say that the fall did contribute, but
16 whether it was the only contributor, I would not be
17 able to say.
18        Q.    Okay.  That's fair.  So we can agree that
19 the fall after being tased was one of the contributing
20 factors to his death, correct?
21        A.    Yes.
22        Q.    Okay.  As to whether or not the blow to
23 the face which we've described contributed, you simply
24 don't have enough information to say one way or the
17:1 other as to whether it contributed; is that fair?
 2        A.    Yes.
```

Scantlebury deposition, p. 16.

There is clearly a *temporal* relationship between McKinney's actions and Barnhart's death. That, however, is insufficient to establish a *causal* relationship. For example, the fact that the TV weatherman got out of bed this morning is not the cause of the day's rains. It is simply a temporal relationship. In order to establish legal causation, plaintiff needs more than the temporal relationship. Plaintiff has had more than an ample opportunity to develop expert testimony.[3]

It would be one thing if Dr. Scantlebury had at least testified that McKinney's blow to the face contributed to the death. She specifically, however, could not say that. None of the pathological findings she found, which resulted in the death, were consistent with the left-sided facial injury. Scantlebury deposition, p. 14, line 17-20; p. 15, line 8-13. When asked about the facial strike, she specifically said **"If that exacerbated or also caused the subdural hematoma, I wouldn't be able to tell".** Scantlebury deposition, page 11, line 5 (emphasis added).

Without question this was a tragic event. Also beyond dispute is the fact that Officer McKinney acted inappropriately when he struck the handcuffed subject in the face. There simply, however, is not enough evidence to tie that slap to the subsequent death.

Mr. Barnhart was lawfully tased while fleeing from the police. By its nature, a taser causes the muscles to lock up and the subject then falls in such a way that they are not able to break the fall. The injuries found by the medical examiner are consistent with this. Head injuries after being tased are a recognized complication. Taser International, the manufacturer of

---

[3] Plaintiff in fact has had longer than parties might have in similar cases since this case was stayed for an extended period of time during the pendency of McKinney's criminal proceedings.

7

these items, recognizes that secondary injuries may result from a fall after tasing. See e.g. Law Enforcement Warnings, Exhibit E.[4]

Plaintiff cannot simply state that all of the actions of the multiple officers combined to cause the death. Plaintiff must identify the specific conduct of the officer that is alleged to be excessive and unreasonable and that it caused the injury complained of. See e.g., *Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 594-95 (7th Cir. 1997); *Brownell v. Figel*, 950 F.2d 1285, 1292-93 (7th Cir. 1991). Clearly, causation sometimes can be left to lay juries without expert testimony. This is not one of those cases. Instead this is a case which requires the plaintiff to establish causation through "specific and detailed expert testimony". See e.g., *Lash v. Hollis*, 525 F.3d 636, 641 (8th Cir. 2008). See also *Cyrus v. Town of Mukwonago*, 624 F.3d 856 (7th Cir. 2010). If Roy Barnhart had died from a gunshot, that might be within the realm of common understanding for jurors to find causation without the need for expert testimony. When the plaintiff died from a subdural hematoma after allegedly experiencing numerous impacts to his cranium, some expert needs to opine that McKinney's conduct caused or might have caused the injury. Dr. Scantlebury disavows any such opinion. Allowing the case to proceed would essentially allow the plaintiff to rely on a bastardized version of *res ipsa loquitur*.

No disclosed witness, be it Dr. Scantlebury or any of the lay witnesses, can testify that McKinney's actions in striking the suspect **caused** the suspect's death. Nor can any witness even say that the slap was a **contributing factor** in the death. Dr. Scantlebury has specifically indicated she cannot make that statement. Plaintiff has not presented one scintilla of admissible testimony to show the medical causation. The jury should not be left to speculate. Absent this

---

[4] It should be pointed out that plaintiff's Complaint alleges that McKinney tased Barnhart. There is absolutely no evidence of that. Officer Dale has admitted that he is the officer who administered the taser. Dale deposition, p. 81.

evidence, plaintiff cannot carry her burden of proof that McKinney's actions killed Roy Barnhart, Sr. Summary judgment on that issue is mandated under the circumstances.

WHEREFORE, the defendants, WILLIAM McKINNEY, Individually and in his Official Capacity as an Officer for the Buckner Police Department and the VILLAGE OF BUCKNER, ILLINOIS, pray that this Court enter an order granting partial summary judgment in their favor on the issue of causation of death as follows:

a) Finding that no triable issue of fact exists with regard to the allegation that William McKinney caused Roy Barnhart, Sr.'s death;

b) Entering judgment in favor of McKinney and the Village of Buckner, Illinois and against plaintiff on any claim that McKinney's conduct caused or contributed to cause the death of Roy Barnhart, Sr.;

c) Barring plaintiff from presenting any undisclosed opinion testimony as the time for such disclosures has expired;

d) Such other relief as this Court deems equitable and proper.

Respectfully Submitted,

By: s/Charles A. Pierce
    PIERCE LAW FIRM, P.C.
    #3 Executive Woods Court, Suite 200
    Belleville, IL 62226
    Phone: 618-277-5599
    Fax: 618-239-6080
    E-mail: cpierce@piercelawpc.com
    Attorney Bar # 6208106
    Attorney for William McKinney

Respectfully Submitted,

By: s/Joseph A. Bleyer (By Consent)
    BLEYER and BLEYER
    601 West Jackson Street
    Post Office Box 487
    Marion, IL  62959-0487
    Phone: 618-997-1331
    Fax: 618-997-6559
    E-mail: jableyer@bleyerlaw.com
    Attorney Bar # 6193192
    Attorney for Village of Buckner, Illinois

# CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2015 I electronically filed a MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF CAUSATION OF DEATH on behalf of the defendants, WILLIAM McKINNEY, Individually and in his Official Capacity as a Police Officer with Buckner Police Department and the VILLAGE OF BUCKNER, and with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to the following:

Mr. Jarrod P. Beasley
Kuehn, Beasley & Young, P.C.
23 Public Square, Suite 450
Belleville, IL  62220

Mr. Jerome E. McDonald
Black, Hedin, Ballard, McDonald, P.C.
108 South 9th Street
P. O. Box 4007
Mt. Vernon, IL  62864

                                       Respectfully submitted,

                                       s/CHARLES A. PIERCE
                                       Pierce Law Firm, P.C.
                                       #3 Executive Woods Court, Suite 200
                                       Belleville, IL  62226
                                       Phone: (618) 277-5599
                                       Fax: (618) 239-6080
                                       E-mail: cpierce@piercelawpc.com
                                       Attorney Bar Number # 06208106